UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

In re:

GALLERIA 2425 OWNER LLC,

    Debtor.

Case No. 23-60036
Chapter 11

**DECLARATION OF ALI CHOUDHRI IN SUPPORT OF CASH COLLATERAL MOTION**

| COUNTY OF HARRIS | § |
| STATE OF TEXAS | § |

    1.    My name is Ali Choudhri. I am over the age of eighteen and am otherwise capable of making this declaration. I have personal knowledge of the facts stated herein and they are true and correct.

    2.    I am an Officer and Manager of Galleria 2425 Owner LLC. On July 5, 2023 (the "Petition Date"), I authorized a voluntary chapter 11 petition to be filed on behalf of Galleria 2425 Owner LLC (the "Debtor").

    3.    I am making this declaration in support of the *Debtor's Motion for Interim and Final Orders Authorizing It to Use Cash Collateral* [Dkt. No. 18] (the "Cash Collateral Motion").

    4.    The Debtor's primary asset is a Class A office building located at 2425 West Loop South, Houston, Texas 77027(the "Property").

    5.    The Property is fully covered by commercial property and liability insurance.

    6.    As of the Petition Date, the Debtor was allegedly indebted to National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") pursuant to a loan made to the Debtor by NBK (the "Loan"). The Loan is evidenced by, *inter alia*: (i) a *Loan Agreement* by and between the Debtor

and NBK dated May 23, 2018; (ii) a *Promissory Note* dated May 23, 2018 made by the Debtor in the original principal amount of $60,212,816.90 in favor of NBK; and (iii) that certain *Deed of Trust, Assignment of Leases and Rents and Profits, Security Agreement and Fixture Filing* dated May 23, 2018, by and between the Debtor and NBK (collectively, the "Loan Documents"). The Loan is allegedly secured by various instruments, including a deed of trust and UCC-1 financing statements, which were allegedly filed of record in appropriate jurisdictions. Collateral for the Loan includes, *inter alia*, the Property and rents received from the operation of the Property.

7.  The Debtor's only source of operating funds is generated by the operation of the Property, specifically, rental and other income from tenants at the Property collected by or for the benefit of the Debtor.

8.  By virtue of the Loan Documents referenced above, NBK asserts a first lien priority on the Debtor's assets, including the rents received from tenants of the Property, which constitute cash collateral pursuant to Section 363(a) of the Bankruptcy Code.

9.  The Debtor requires the use of NBK's cash collateral to continue the operation of the Property and will suffer irreparable and immediate harm if it is not granted the relief requested herein. An immediate and critical need exists for the Debtor to obtain funds in order to continue operating the Property, and without such funds, the Debtor will not be able to pay its direct operating expenses, maintain the Property, or obtain goods and services needed to carry on its business during this sensitive period in a manner that will avoid irreparable harm to the Debtor's estate. The Debtor's ability to use NBK's Cash Collateral is vital to the confidence of the Debtor's tenants, vendors, and suppliers of goods and services to the Property and to the preservation and maintenance of the going concern value of the Debtor's estate.

10. A budget reflecting the Debtor's projected monthly normal and necessary costs is attached hereto as Exhibit A (the "Budget"). Absent the authority to use the amounts set forth in the Budget, the Debtor will be unable to operate and maintain the Property and therefore successfully reorganize.

11. As adequate protection, the Debtor proposes to provide the following adequate protection to secured creditors to the extent of any diminution in the value of their respective collateral:

   a. superpriority claims, pursuant to sections 361(2), 363(c)(2), 364(d)(1), 503(b)(1), 507(a)(2) and 507(b) of the Bankruptcy Code with such superpriority claims to be senior to all other postpetition superpriority claims, subject to a carve-out for professional fees and fees owed to the United States Trustee as reflected in the budget; and

   b. replacement liens on all property now owned or hereafter acquired by the Debtor, with such liens to be subordinate only to the liens of any applicable taxing authority, and subject to a carve-out for professional fees and fees owed to the United States Trustee in accordance with the budget.

12. Any secured creditor's interest in cash collateral will be protected by the adequate protection set forth above, as the Debtor will continue to operate its business, manage and maintain the Property and its tenancy, and continue its efforts to lease vacant space, thereby preserving and improving the value of the Property through its use of Cash Collateral.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

EXECUTED this 14th day of July, 2023.

_____
Ali Choudhri