UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| **In re:** <br><br> **GALLERIA 2425 OWNER LLC,** <br><br> Debtor. | **Case No. 23-60036** <br> **Chapter 11** |

INTERIM ORDER AUTHORIZING
DEBTOR TO USE CASH COLLATERAL

**CAME ON** for consideration on this date *Debtor's Emergency Motion for Interim and Final Orders Authorizing the Debtor to Use Cash Collateral* (the "**Motion**") filed by Galleria 2425 Owner LLC (the "**Debtor**"), the debtor-in-possession in the above-captioned bankruptcy case.

Upon consideration of the Motion, the Court finds that all required parties have been served with notice thereof and that the Motion is well-taken and that the relief sought therein should be, and hereby is, **GRANTED**. Accordingly, it is hereby found that:

1. **Petition Date**. On July 5, 2023 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**"). The Debtor continues to operate and manage its business as "debtor in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2. **Jurisdiction and Venue**. This Court has jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2).

3. **Single Asset Real Estate**. The Debtor's primary asset is a Class A office building located at 2425 West Loop South, Houston, Texas 77027(the "**Property**"). The Property is fully covered by commercial property and liability insurance.

4. **Committee Formation**. No examiner or statutory committee has been appointed in the Bankruptcy Cases pursuant to §§ 1102 or 1104 of the Bankruptcy Code.

5. **The Prepetition Loan Documents**. National Bank of Kuwait, S.A.K.P., New York Branch ("**NBK**") asserts that the Debtor was indebted to NBK under a prepetition loan (the "**Prepetition Loan**") and that the Debtor's obligations under the Prepetition Loan (the "**Prepetition Obligation**") are evidenced by, among others, the following loan documents (collectively, the "**Prepetition Loan Documents**"):

      i. that certain Loan Agreement by and among NBK and the Debtor, dated May 23, 2018;

      ii. that certain Promissory Note executed by the Debtor in favor of NBK, dated May 23, 2018;

      iii. that certain Deed of Trust, Assignment of Leases and Rents and Profits, Security Agreement and Fixture Filing, dated May 23, 2018, recorded RP-2018-235600 in the Real Property Records of Harris County, Texas covering the Property; and

6. **Prepetition Liens**. NBK asserts that the Prepetition Loan Documents are secured by various instruments, assignments, and certificates, including deeds of trust, which: (a) were filed of record in appropriate jurisdictions; and (b) granted NBK first-priority, properly perfected, senior liens and security interests (the "**Prepetition Liens**") upon and in all of the Debtor's personal and real property, fixtures, improvements, and rents and proceeds derived therefrom, including, but not limited to, Cash Collateral (as hereinafter defined) related to the Property, including, but not limited to, all Leases (as defined by the Assignment), all leases, subleases or subsubleases, lettings, licenses, concessions or other agreements made a part hereof (whether written or oral and whether now or hereafter in effect), pursuant to which any Person (as defined by the Assignment) is granted a possessory interest in, or a right to use or occupy, all or any portion of any space in that certain lot or piece of land related to the Property, all Rents (as defined by the Assignment), all rents, rent equivalents, income, receivables, revenues, receipts, insurance proceeds, deposits and profits arising from the Leases and renewals thereof together with all rents, rent equivalents, income, fees, receivables, accounts, profits (including, but not limited to, all oil and gas or other mineral royalties and bonuses), charges for services rendered and any and all payments and consideration of whatever form or nature received by the Debtor or its agents or employees from any and all sources relating to the use, enjoyment and occupancy of the Property and all proceeds related thereto, as further described by the Prepetition Loan Agreements (the "**Prepetition Collateral**"). NBK asserts that it has a valid, properly perfected, first priority lien on the Debtor's rental proceeds derived from the leasing and operation of the Property, and other rights to such payment (collectively, the "**Rental Proceeds**"), which constitute cash collateral pursuant to section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"). NBK asserts that, by virtue of the Prepetition Liens and by operation of section 552(b) of the Bankruptcy Code, NBK holds a first priority security interest in post-petition revenues from the Prepetition Collateral collected by the Debtor, whether now in the Debtor's (or persons in privity with the Debtor or appointed chapter 7 or 11 trustee) possession, custody, or control, or in which the Debtor's estate will obtain an interest during the pendency of this bankruptcy case.

7. **Irreparable Harm**. The Debtor requires the use of cash collateral to continue the operation of its business and will suffer irreparable and immediate harm if it is not granted the relief requested herein. An immediate and critical need exists for the Debtor to obtain funds in order to continue operating the Property, and without such funds, the Debtor will not be able to pay its direct operating expenses, maintain the Property, or obtain goods and services needed to carry on its business during this sensitive period in a manner that will

avoid irreparable harm to the Debtor's estate. The Debtor's ability to use Cash Collateral is vital to the confidence of the Debtor's tenants, vendors, and suppliers of goods and services to the Property and to the preservation and maintenance of the going concern value of the Debtor's estate.

8. The value of the Cash Collateral may diminish as the Debtor operates and uses and expends Cash Collateral, and creditors with a secured interest in Cash Collateral are entitled to adequate protection of their respective interests in the Debtor's use of Cash Collateral.

9. **Cause Shown**. Good cause has been shown for the entry of this Order. The Debtor believes that it is in the best interests of the Debtor's estate and its creditors to utilize the Cash Collateral subject to the terms and conditions set forth herein. The Debtor believes use of the Cash Collateral subject to the terms and conditions set forth herein is a proper exercise of its business judgment. NBK does not consent to the use of any Cash Collateral, except on the terms and conditions as specified herein. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are expected to provide adequate protection for NBK's interests in the Prepetition Collateral under this Order.

10. **Notice**. The Court finds that the notice to the U.S. Trustee and the Debtor's creditors was sufficient under the circumstances. Entry of this Order is justified and appropriate under the circumstances and is in the best interest of the estate. Use of Cash Collateral as provided herein is being authorized to avoid immediate and irreparable harm.

**IT IS THEREFORE ORDERED AND ADJUDGED** as follows:

11. The Motion is **GRANTED** as set forth herein.

12. **Use of Cash Collateral**. The Debtor is hereby authorized in the interim to use Cash Collateral only in the amounts and for the expenses and disbursements set forth in the Budget attached as **Exhibit A**, and Cash Collateral shall not be used for any other purpose or in any other amount, subject to the Budget Variance as defined below. The Debtor shall not incur expenses nor use Cash Collateral in an amount that exceeds by more than five percent (5%) the total expenses provided in the Budget ("**Budget Variance**") without first obtaining NBK's consent in writing or approval of this Court. Any legal and professional fees set forth in the Budget remain subject to interim and final allowance by this Court and remain subject to all applicable provisions of the Bankruptcy Code and the Bankruptcy Local Rules, including, sections 327 and 330 of the Bankruptcy Code.

13. **Adequate Protection**. Subject to the Carve-Out (defined below), as partial adequate protection and in the same priority and to the same extent and validity as existed prepetition, NBK is hereby granted: (a) automatic perfected replacement liens (the "**Replacement Liens**") on all Rental Proceeds, accounts, and receivables related to the use or occupancy of the Property that are now owned or hereafter acquired by the Debtor (the "**Collateral**"); and (b) superpriority administrative claims (the "**Superpriority Claims**") pursuant to sections 361(2), 361(3), 503(b)(1), 507(a)(2), and 507(b) of the Bankruptcy Code. The Replacement Liens granted herein shall not attach to any Chapter 5 causes of

action under the Bankruptcy Code. The Replacement Liens and the Superpriority Claims are granted solely to the extent that the Debtor's use of Cash Collateral results in a diminution in value of the Prepetition Collateral securing the Prepetition Obligation and shall constitute legal, valid, binding, fully perfected, and non-avoidable obligations of the Debtor's estate, enforceable against the Debtor's estate and its respective successors and assigns, including, without limitation, any successor trustee(s) or other estate representative(s) in the bankruptcy case or any subsequent or superseding proceedings under chapter 7 or chapter 11 of the Bankruptcy Code (a "**Subsequent Proceeding**"), in accordance with the terms of this Order. No obligation, payment, transfer, or grant of a security interest under this Order shall violate the automatic stay under section 362 of the Bankruptcy Code or be avoidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, setoff, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity.

14. **Carve Out**. The "Carve-Out" shall mean, in this Order and subject to the entry of a final order approving the Motion: (a) all fees and expenses incurred by the Debtor's professionals that are approved by the Court pursuant to section 330 of the Bankruptcy Code (the "**Professionals**"); (b) statutory liens of ad valorem taxing authorities; and (c) quarterly fees owed to the Office of the United States Trustee. The Carve-Out may only be used for the payment of fees and expenses as provided herein and of estate professionals to the extent approved by order of this Court. Nothing herein shall be construed to impair the ability of NBK or any party-in-interest to object or contest any objection to any fees, expenses, reimbursement, or compensation sought by the estate professionals, nor shall anything herein be construed to affect the rights of any party-in-interest to file an application for the allowance of fees and expenses.

15. **Insurance**. As additional partial adequate protection, the Debtor shall maintain adequate insurance coverage on the Prepetition Collateral and the Collateral, as required under the Prepetition Loan Documents, or any loan document, note, agreement, letter agreement, security agreement, guarantee, or other documents executed by the Debtor in favor of NBK, (collectively, the "**Insurance**"). The Debtor shall maintain or name NBK as mortgagee, lender loss payee, and/or additional insured under the insurance policies.

16. **Termination of Use of Cash Collateral**. The Debtor is authorized to use Cash Collateral in accordance with this Order until the earlier of the following (the "**Termination Date**"): (i) five (5) business days after notice by a creditor with an interest in Cash Collateral to the Debtor of any Termination Event (as defined herein), unless within such five day period the Debtor has cured such Termination Event or unless waived by such creditor, (ii) the date of the dismissal of Debtor's bankruptcy case or the conversion of Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code, or (iii) the date of appointment of a trustee in Debtor's chapter 11 bankruptcy case.

17. **Termination Events**. The Debtor shall immediately cease using Cash Collateral after the Cure Period upon the occurrence of any of the following events (each a "**Termination Event**"):

    i. The Debtor violates any terms of this Order;

    ii. The failure by Debtor to pay when due operating expenses incurred after the Petition Date;

    iii. The failure by the Debtor to maintain the Insurance;

    iv. The occurrence of the effective date or consummation date of a plan of reorganization for Debtor;

    v. The entry by this Court or any other court of an order reversing, staying, or vacating this Order or amending, supplementing, or otherwise modifying in any material manner the protections granted to Debtor in this Order; or

    vi. The entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Code to any entity other than Debtor that permits such entity to exercise foreclosure or disposition rights with respect to the Prepetition Collateral.

18. Upon the occurrence of any Termination Event of this Order (each a "**Notice Termination Event**"), NBK shall provide to the Debtor written notice of such Notice Termination Event, which shall be accomplished by email. If the Debtor has failed to fully and completely cure any such Notice Termination Event to NBK's satisfaction within five (5) business days after delivery of notice of the Notice Termination Event by NBK's counsel (the "**Cure Period**"), then without any further act, notice or action by NBK or any further notice, hearing, act or order of this Court, the Debtor's authority to use Cash Collateral and any and all obligations of NBK under this Order shall terminate. Upon such termination, the Debtor shall immediately cease making any use or disbursement of the Cash Collateral until further order from this Court or permission from NBK.

19. **No Payments on Prepetition Debts**. The Debtor is prohibited from paying any indebtedness or transferring property to vendors, contractors, customers, or other persons whose debt may have been incurred prior to the Petition Date, except upon separate order of the Court.

20. **Reporting Requirements**. No later than fourteen (14) days after entry of this Order, the Debtor shall email counsel to NBK the following items:

    i. Copies of bank account statements (including copies of all bank statements since the Petition Date), including copies of all checks, wires, and deposit documents for the six month period preceding the Petition Date;

    ii. Copies of the Debtor's monthly rent rolls and rent aging reports for the six months prior to the Petition Date;

21. **Access to Information**. No later than fourteen (14) days after entry of this Order, the Debtor shall provide counsel to NBK with:

    i. Copies of all current leases with tenants of the Property; and

    ii. Copies of the Debtor's financial statements regarding revenue and expenses during the preceding one-hundred eighty (180) days of the Petition Date.

22. **Modification of Automatic Stay**. Upon the expiration of a Cure Period following the occurrence of a Termination Event, NBK may file a motion seeking to modify the automatic stay under section 362 of the Bankruptcy Code to permit NBK to exercise any and all remedies under the Prepetition Loan Documents including, without limitation, to proceed with the foreclosure of the Property. Parties-in-interest must receive at least five days' notice of the hearing on any such motion filed by NBK seeking relief from the automatic stay.

23. **Protection of Existing Collateral**. Collateral, including Cash Collateral, shall not be used or sold other than in the ordinary course unless the Debtor obtains the approval of this Court.

24. **Notice**. Within five (5) business days after entry of this Order, the Debtor's counsel shall serve a copy of this Order on: (a) the Office of the United States Trustee; (b) counsel to NBK, Charles C. Conrad (charles.conrad@pillsburylaw.com) and Andrew M. Troop (andrew.troop@pillsburylaw.com); (c) all creditors known to the Debtor who have or may assert liens against the Debtor's assets; and (d) all parties-in interest who have filed a notice of appearance.

25. **Reservation of Rights**. NBK shall not be limited or prohibited by this Order or otherwise in seeking additional adequate protection for the use of Cash Collateral as provided herein or any other appropriate relief. Further, except as expressly stated herein, nothing in this Order is intended to or shall modify any terms or rights of the Prepetition Loan Documents. Furthermore, NBK shall have the right, but not the obligation, to credit bid in any sale of the Debtor's assets, up to the full amount of NBK's secured claim. Additionally, nothing in this Order shall prevent NBK from filing a subsequent pleading in this bankruptcy case requesting: (a) to discontinue use of Cash Collateral for any reason not discussed or contemplated in this Order; and/or, (b) relief from the automatic stay.

26. The protections afforded to NBK under this Order, and any actions taken pursuant thereto, shall survive the entry of an order converting this bankruptcy case to chapter 7 of the Bankruptcy Code, and the Replacement Liens and the Superpriority Claims (pursuant to sections 503(b), 507(a)(2), and/or 507(b) of the Bankruptcy Code, or otherwise), to the extent applicable, if any, shall continue in this proceeding and in any such Subsequent Proceeding, and the Replacement Liens and Superpriority Claims shall maintain their priority as provided by this Order until the Prepetition Obligation have been indefeasibly satisfied in full.

27. The consent of NBK to this Order does not constitute a waiver of any pre-petition default(s) or Event(s) of Default under the Prepetition Loan Documents.

28. **Final Hearing.** A final hearing on the Motion shall be held on **____, 2023 at _____ _.m.** The Debtor shall provide notice of such final hearing on the parties listed in the Notice paragraph above. Such notice shall be deemed sufficient pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure. No further notice of the Motion is necessary.

29. **Findings and Conclusions**. To the extent any findings of fact may constitute conclusions of law, and vice versa, they are hereby deemed as such.

30. **Immediate Effect**. This Order shall take effect immediately on execution hereof, notwithstanding any application of Federal Rules of Bankruptcy Procedure 4001(a)(3), 6004(h), 7062, or 9014.

31. **Retention of Jurisdiction**. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Interim Order.

32. **Necessary Action**. The automatic stay under section 362 of the Bankruptcy Code is hereby modified, as necessary, to permit NBK to take any and all necessary and appropriate actions to implement the terms of this Interim Order.

DATED:_____

                                                      _____
                                                      CHRISTOPHER M. LOPEZ
                                                      UNITED STATES BANKRUPTCY JUDGE