IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| GALLERIA 2425 OWNER LLC, | ) Case No. 23-60036 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

**NAISSANCE GALLERIA, LLC'S <u>EMERGENCY</u> MOTION FOR (I) ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY, OR (II) ALTERNATIVELY, GRANTING RELIEF FROM THE AUTOMATIC STAY**

> **Emergency relief has been requested. Relief is requested not later than November 10, 2023.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

**TO THE HONORABLE CHRISTOPHER M. LOPEZ,**
**UNITED STATES BANKRUPTCY JUDGE:**

Naissance Galleria, LLC ("<u>Naissance</u>"), the mezzanine lender to Galleria 2425 JV, LLC ("<u>JV</u>"), the 100% owner of Galleria 2425 Owner, LLC (the "<u>Debtor</u>"), respectfully requests the entry of an order pursuant to sections 105 and 362 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") (i) confirming that the automatic stay does not apply to Naissance's exercise of remedies against Galleria 2425 JV, LLC ("<u>JV</u>") and (ii) confirming that, based on a Texas state court temporary injunction order, Azeemeh Zaheer is legally entitled to control and direct Naissance in connection with the Adversary Proceeding (as defined below) without violating the automatic stay. In the alternative, to the extent the Court determines that the automatic stay applies, Naissance respectfully requests relief from the automatic stay so that Naissance may

1

exercise remedies against JV and take certain actions in the Adversary Proceeding. In support of its motion (the "Motion"), Naissance represents as follows:

## PRELIMINARY STATEMENT

1. On September 14, 2023, the 80th Civil District Court in Harris County, Texas (the "State Court") Cause No. 2023-43755, granted Azeemeh Zaheer a temporary injunction a temporary injunction (the "Temporary Injunction"), which enjoined Naissance Galleria, LLC from taking any action, operation, and decisions in the course of its business unless specifically authorized by Ms. Zaheer. The Temporary Injunction is attached hereto as **Exhibit A**. At the center of the controversy leading to the Temporary Injunction was the forgery of Ms. Zaheer's signature on a document claiming that Ms. Zaheer assigned her authority as managing member of Naissance to Ali Choudhri and assigned her interests in Naissance and Naissance Capital Real Estate, Ltd. to Mr. Choudhri. Mr. Choudhri, as purported manager of Naissance, has admitted that he could forgive Naissance's loan to his company, JV, and continues to hold himself out as the managing member of Naissance to Naissance and Ms. Zaheer's detriment. Based on the authority granted to her pursuant to the Temporary Injunction, Ms. Zaheer intends to exercise remedies under the applicable loan documents that would place her in control of the Debtor.

2. Naissance seeks an order from the Court confirming that the automatic stay does not apply to Naissance's exercise of remedies against JV, specifically by taking ownership or voting control over JV's ownership interests in the Debtor. In addition, Naissance seeks confirmation that, based on the Temporary Injunction, Ms. Zaheer is permitted to control Naissance and take actions (such as dismissal) in the Adversary Proceeding on behalf of Naissance without violating the automatic stay. In the alternative, Naissance seeks relief from the automatic stay to exercise remedies against JV and dismiss claims asserted in the Adversary Proceeding.

3.	The automatic stay does not limit Naissance's ability to take ownership or voting control of JV's ownership interest in the Debtor. Naissance's loan is to JV, on which JV defaulted, and JV is not entitled to claim protections of the automatic stay as a non-debtor. Allowing Ms. Zaheer to exercise her ownership of Naissance and control its decisions with the Adversary Proceeding merely effectuates relief already granted by the State Court.

## EMERGENCY RELIEF REQUESTED

4.	Naissance respectfully requests emergency consideration of this Motion pursuant to Bankruptcy Rule 6003. Emergency consideration is warranted to prevent the immediate and irreparable harm of Naissance and Ms. Zaheer, its sole member. Mr. Choudhri has held himself out as the manager of Naissance on the basis of a forged Subject Assignment (defined below) and forged Amended LLC Agreement (defined below). The State Court entered the Temporary Injunction to prevent continued harm to Ms. Zaheer from Mr. Choudhri's activities with respect to Naissance. In order to prevent further harm to Naissance's interests in this Bankruptcy Case or the Adversary Proceeding, the relief requested in this Motion is necessary no later than November 10, 2023.

## JURISDICTION AND VENUE

5.	The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

6.	Venue for this Motion is proper pursuant to 28 U.S.C. § 1408. The Court may grant the relief requested in this Motion pursuant to sections 105 and 362(d) of the Bankruptcy Code.

**FACTUAL BACKGROUND**

A.     **The Bankruptcy Case and Adversary Proceeding**

7.     On July 5, 2023 (the "Petition Date"), the Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Case"). The petition was signed by Dward Darjean as the alleged manager of the Debtor.

8.     On September 19, 2023, Adversary Case No. 23-06009 (the "Adversary Proceeding"), was filed by the Debtor, Naissance, and Mr. Choudhri (the "Plaintiffs") against National Bank of Kuwait, S.A.K.P., New York Branch ("NBK") [Docket No. 64]. The Plaintiffs asserted claims for (i) breaches of a confidential settlement agreement; (ii) tortious interference with a contract; (iii) tortious interference with business relations; (iv) fraud and fraudulent inducement/lender liability; (v) fraudulent conveyance; (vi) estoppel; (vii) business disparagement; (viii) breach of good faith and fair dealing; (ix) unjust enrichment; and (x) for attorneys' fees.

9.     Ms. Zaheer did not authorize the filing the Adversary Proceeding on behalf of Naissance.

10.    On October 9, 2023, a letter from NBK to the Court was docketed which brought the Temporary Injunction to the Court's attention [Docket No. 77].

11.    On October 13, 2023, following a status conference on NBK's letter, Naissance sent a letter to the counsel representing the plaintiffs in the Adversary Proceeding (i) informing him that Ms. Zaheer did not approve the filing by Naissance, and (ii) requesting that he dismiss the Naissance claims in the Adversary Proceeding without prejudice. A copy of this letter is attached hereto as **Exhibit B**.

12. On October 16, 2023, plaintiffs' counsel responded that he would not take direction from Ms. Zaheer on behalf of Naissance notwithstanding the Temporary Injunction and he would not dismiss the Adversary Proceeding. A copy of this email response is attached hereto as **Exhibit C**.

**B. Naissance, the Mezzanine Loan and the State Court Proceeding**

13. Ms. Zaheer formed and incorporated Naissance Capital Real Estate, Ltd. in November 2015, as the sole member.

14. On April 13, 2018, Ms. Zaheer formed and incorporated Naissance, a Cayman Islands Limited Liability Company, as the sole member.

15. On May 23, 2018, Naissance and JV entered into a Mezzanine Loan Agreement and JV issued the Mezzanine Promissory Note to Naissance, pursuant to both of which Naissance, as mezzanine lender, loaned approximately $16.1 million to JV (the "Mezzanine Loan"), the entity that owns 100% of the Debtor. In connection with the Mezzanine Loan, JV and Naissance entered into a Pledge and Security Agreement (the "Pledge Agreement" and together with the Mezzanine Loan Agreement, the Mezzanine Promissory Note, and related loan documents, the "Mezzanine Loan Documents") pursuant to which JV pledged, amongst other things, 100% of the membership interests in the Debtor. A copy of the Pledge Agreement is attached hereto as **Exhibit D**.

16. Upon an event of default, the Pledge Agreement permits Naissance to register the interests of the Debtor in its name or exercise all voting and membership rights associated with such interests.

17. On or about July 18, 2022, Ms. Zaheer, on behalf of Naissance, sent a notice of default (the "Notice of Default") to JV for failing to make loan payments, among other defaults, on the Mezzanine Loan. A copy of the Notice of Default is attached hereto as **Exhibit E**.

18. On or about July 28, 2022, Mr. Choudhri's counsel responded to the Notice of Default, claiming Ms. Zaheer had assigned her authority as managing member for Naissance to Mr. Choudhri. Attached to the email was one-page document, dated July 3, 2020, entitled "Assignment of Naissance Galleria, LLC and Naissance Capital Real Estate, Ltd." (the "Subject Assignment"). Referenced in the Subject Assignment was a document referred to as an "Amended and Restated Limited Liability Company Agreement of Naissance Galleria, LLC and Naissance Capital Real Estate, Ltd." (the "Amended LLC Agreement").[1]

19. Mr. Choudhri claims that Ms. Zaheer signed her name on the signature blocks of the Subject Assignment, which Ms. Zaheer denies and asserts that the Subject Assignment is a forgery. Most notably, Ms. Zaheer's purported signatures on the Subject Assignment do not match, nor do the handwritten dates. Exhibit A at ¶ 9. In addition, the Amended LLC Agreement contains a signature page that does not belong to the Amended LLC Agreement because the identifying footer on the signature page does not match the identifying footer on the rest of the pages of the document. Exhibit A at ¶ 11.

20. Mr. Choudhri had his attorney, Bruce Merwin, draft and send Mr. Choudhri the Subject Assignment on July 3, 2020. Exhibit A at ¶ 12.

21. Mr. Choudhri also asked Chris Wyatt, the Chief Operating Officer of one of Choudhri's companies to draft a version of the Subject Assignment and texted Mr. Wyatt, "Would you print what you prepared Azeemeh to sign for my being Mgr." Exhibit A at ¶ 13.

22. The State Court heard evidence at a temporary injunction hearing from September 5, 2023 to September 7, 2023. At the hearing, Mr. Choudhri admitted that he would continue to hold himself out as Naissance's manager and operate and make decisions for Naissance. Exhibit A

---

[1] The Amended LLC Agreement was not attached to the email sent by Mr. Choudhri's counsel or to the Subject Assignment.

at ¶ 15. He also admitted that he could "as purported manager for Naissance … forgive the $16 million mezzanine loan to his company [JV]." Exhibit A at ¶ 17.

23. Mr. Choudhri's actions have materially and substantially interfered with Ms. Zaheer's ability to operate Naissance. The State Court acknowledged that the Subject Assignment could be a forged document. Exhibit A at ¶ 14. In addition, the State Court found that Ms. Zaheer's access to the judicial process has been unreasonably hampered. Exhibit A at ¶¶ 18-24.

24. On September 21, 2023, just two days after the Adversary Proceeding was filed without Ms. Azeemeh's consent, the State Court entered the Temporary Injunction on the basis of the evidence elicited at the temporary injunction hearing, which enjoins Naissance from taking any action, operation, and decisions in the course of its business unless specifically authorized by Ms. Zaheer. Exhibit A at 3.

## RELIEF REQUESTED AND BASIS FOR RELIEF

25. Naissance requests that the Court enter an order confirming the following: (i) that the automatic stay does not apply to Naissance's exercise of remedies against JV, specifically by taking ownership or voting control over JV's ownership interests in the Debtor; and (ii) that, based on the Temporary Injunction, Ms. Zaheer is permitted to control Naissance and take actions (such as dismissal) in the Adversary Proceeding without violating the automatic stay. In the alternative, Naissance seeks relief from the automatic stay to exercise remedies against JV and that Ms. Zaheer is permitted to control Naissance and cause it to take actions in the Adversary Proceeding.

26. Naissance is confident that the automatic stay does not apply to these actions. Nonetheless, Naissance files this motion in order to avoid any dispute with Mr. Choudhri regarding the automatic stay because the exercise of these remedies will change the party in control of the Debtor and likely the direction of this chapter 11 case.

A. **The Automatic Stay Does Not Apply.**

27. In general, "a section 362(a)(1) stay is available only for the debtor's benefit and does not prohibit actions against nonbankrupt third parties or codefendants." *S.I. Acquisition v. Eastway Delivery Servs., Inc. (Matter of S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1147 (5th Cir. 1987); *see also Queenie Ltd. v. Nygard Int'l*, 321 F.3d 282, 287-88 (2d Cir. 2003) (judgment debtor's filing of bankruptcy petition stayed his appeal and that of debtor's wholly-owned corporation, but not that of co-defendants found separately liable in underlying action). "Chapter 11 . . . contains no provision to protect nondebtors who are jointly liable on a debt with the debtor." *Teachers Ins. and Annuity Assoc. v. Butler*, 803 F.2d 61, 65 (2d Cir. 1986); *see also Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1196 (6th Cir. 1983) ("It is universally acknowledged that an automatic stay of a proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the Chapter 11 debtor . . . The legislative history . . . discloses a congressional intent to stay proceedings against the debtor, and no other."); *Am. Film Techs. v. Taritero (In re Am. Film Techs.)*, 175 B.R. 847, 850 (Bankr. D. Del. 1994) ("The automatic stay affords protection only to debtors and does not extend to 'co-tortfeasors,' 'joint obligors,' 'guarantors,' 'sureties,' or other non-debtor 'co-defendants.'"). Further, while "a bankruptcy court may invoke § 362 to stay proceedings against non-bankrupt co-defendants where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," these circumstances are not present here. *See Reliant Energy Servs. v. Enron Can. Corp.*, 349 F.3d 816, 825 (5th Cir. 2003).

8

28.	In *Advanced Ribbons*, the debtor purchased the assets of another entity in exchange for two promissory notes secured by the assets of the debtor. The parties also entered into a pledge agreement under which the debtor's sole shareholder (an individual) pledged all his equity in the debtor as additional security for the debtor's obligations under both notes. *In re Advanced Ribbons & Off. Prod., Inc.*, 125 B.R. 259 (B.A.P. 9th Cir. 1991). The debtor defaulted and the noteholders notified the shareholder of the defaults and acceleration of the obligations under the notes. The noteholders provided notice that, pursuant to the pledge agreement, the shareholder's stock in the debtor would be foreclosed. Immediately before the foreclosure sale, the debtor filed chapter 11. The sale went forward, and the noteholders purchased the stock via credit bid, and made themselves officers and directors of the debtor. The *Advanced Ribbons* court considered "whether the sale of [shareholder's] stock in the debtor pursuant to the pledge agreement violated the automatic stay when the stock was pledged to secure a debt of the debtor and [shareholder] had no personal liability on the debt." *Id.* at 263. The court found that the shareholder was effectively a surety or guarantor under state law and concluded that, "section 362(a) would not stay any acts taken against him." *Id.* at 264.[2] The debtor attempted to argue that because the shareholder had

---

[2] The *Advanced Ribbons* court stated:

> The automatic stay of section 362(a) protects only the debtor, property of the debtor or property of the estate. *See, e.g.*, *In re Casgul of Nevada, Inc.*, 22 B.R. 65, 66 (9th Cir. BAP 1982). It does not protect non-debtor parties or their property. See, e.g., *Credit Alliance Corp. v. Williams*, 851 F.2d 119, 121–22 (4th Cir.1988); *Casgul of Nevada*, 22 B.R. at 66. Thus, section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties liable on the debts of the debtor. *See, e.g.*, *Ingersoll–Rand Financial Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir.1987) (guarantors); *In re Lockard*, 884 F.2d 1171 (9th Cir.1989) (automatic stay did not prevent an action against a surety on a contrac-tor's bond); *see also* 2 COLLIER ON BANKRUPTCY, ¶ 362.02[1] at 362–28–29 (15th ed. 1990). Similarly, the automatic stay does not protect the property of parties such as officers of the debt-or, see, e.g. *Casgul of Nevada*, 22 B.R. at 66, even if the property in question is stock in the debtor corporation. See In re Calamity Jane's, Inc., 22 B.R. 5 (Bankr.D.N.J.1982).

*Advanced Ribbons*, 125 B.R. at 263.

9

no personal liability on the debt, the foreclosure sale was really an act to collect a pre-petition debt against the debtor. *Id.* at 263. The court disagreed:

> "In essence, the appellees had a claim against the debtor, the debtor's property and [shareholder's] stock in the debtor. The foreclosure sale was an act to collect a claim against [shareholder's] property—his stock in the debtor—just as an action against a guarantor is an act to collect a claim against the guarantor." *Id*.

29. Several other courts have held that foreclosing a third-party's equity interests pledged as a guarantee of a debtor's indebtedness is not a violation of the automatic stay. *In re River Family Farms, Inc.,* 85 B.R. 816, 818 (Bankr. N.D. Iowa 1987) (determining that the execution sale of stock in the debtor held by the debtor's principals to enforce a judgment against the principals arising from the debt of the debtor would not be a violation of the automatic stay); *See also In re Monroe Well Service, Inc.,* 67 B.R. 746, 750 (Bankr. E.D. Pa. 1986); *In re Price Chopper Supermarkets, Inc.,* 40 B.R. 816, 817 (Bankr. S.D. Cal. 1984) (determining that automatic stay not violated by the post-petition sale of certain AT&T stock that was owned by a third party and pledged as collateral for the debtor's obligation to a bank).

30. Here, the Debtor is not an obligor or guarantor on the Mezzanine Loan. Therefore, there should be no question that the automatic stay does not apply to Nassaince enforcing an obligation of JV against the assets owned by JV even if those assets are the 100% membership interests in the Debtor.

31. On or about July 18, 2022, Ms. Zaheer, on behalf of Naissance, sent the Notice of Default to JV for failing to make loan payments, among other defaults, on the Mezzanine Loan. Naissance is entitled to exercise remedies for JV's defaults under the Mezzanine Loan Documents free from the limits of the automatic stay. JV has not filed a petition for bankruptcy relief and is not entitled to claim the protections afforded to bankruptcy debtors. Bankruptcy courts across the country have uniformly held that the automatic stay does not apply to the exercise of remedies

against a bankruptcy debtor's principals, even when those remedies relate to the principals' equity interests in the bankruptcy debtor. While the asset pledged as security consists of equity interests in the Debtor and control of the Debtor, such control will not have an impact on the Debtor's estate only which individual is responsible for making decisions on behalf of the estate. Whoever controls the Debtor will be held to the same fiduciary standards in its dealing with the Debtor's assets and creditors. The protections of Bankruptcy Code section 362(a) do not extend to this scenario. Therefore, Naissance requests an order confirming that the automatic stay does not extend to its exercise of remedies against JV pursuant to the Mezzanine Loan Documents and applicable law.

**B.  Ms. Zaheer is Authorized to Control Naissance in the Adversary Proceeding.**

32. As the State Court Proceeding has made clear, Mr. Choudhri intends to continue to hold himself out as Naissance's manager and operate and make decisions for Naissance, which could include forgiving JV of the Mezzanine Loan. *See* Exhibit A at ¶ 15-17. The State Court further acknowledged that the Subject Assignment—which Mr. Choudhri asserted had made him the manager of Naissance—could be a forged document. Exhibit A at ¶ 14. Ms. Zaheer's access to the judicial process has been unreasonably hampered by Mr. Choudhri's forgery. Exhibit A at ¶¶ 18-24. This is true with respect to Naissance's participation in the Adversary Proceeding as counsel retained by Mr. Choudhri to represent the plaintiffs (including Naissance) has acknowledged that he will not recognize Ms. Zaheer's authority pursuant to the Temporary Injunction. The Temporary Injunction enjoins Naissance from taking any action, operation, and decisions in the course of its business unless specifically authorized by Ms. Zaheer. Exhibit A at 3.

33. Participation in the Adversary Proceeding is within the course of Naissance's business. The automatic stay does not extend to any of Ms. Zaheer's actions to exercise control over Naissance, whether in the Adversary Proceeding or outside the context of this Bankruptcy Case. As with the exercise of remedies under the Mezzanine Loan Documents, Ms. Zaheer's control of Naissance in the Adversary Proceeding does not implicate the automatic stay or any of the prohibitions set forth in Bankruptcy Code section 362(a). Naissance should not be permitted to take any actions in the Adversary Proceeding without Ms. Zaheer's prior direction and authorization.

## C. Alternatively, the Court Should Grant Relief from the Automatic Stay.

34. To the extent the Court finds that the automatic stay applies to any proposed actions to be taken by Naissance, it seeks relief from the stay. Upon request from a party in interest and after notice and a hearing, a court shall grant relief from the automatic stay for cause. *See* 11 U.S.C. § 362(d). "Cause" is not expressly defined and therefore courts must determine on a case-by-case basis whether cause exists under the totality of circumstances. *See In re Reitnauer*, 152 F.3d 341, 343 (5th Cir. 1998); *In re WGMJR, Inc.*, 435 B.R. 423, 432 (Bankr. S.D. Tex. 2010); *In re Tex. State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995) ("[C]ause is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations."). "Because there is no clear definition of what constitutes 'cause,' discretionary relief from the stay must be determined on a case by case basis." *Pursifull v. Eakin*, 814 F.2d 1501, 1506 (10th Cir. 1987).

35. Cause exists to lift the automatic stay. Ms. Zaheer and Naissance will continue to be materially harmed by Mr. Choudhri's actions unless the relief requested in this Motion is granted. Ms. Zaheer's access to courts and business relationships have been inhibited by Mr.

Choudhri's representations that he is the manager and authorized operator of Naissance. The automatic stay should not be allowed to limit the State Court's Temporary Injunction, which prohibits Naissance from taking any actions without Ms. Zaheer's authorization. The Temporary Injunction, which does not implicate the Debtor, but third parties, provides sufficient cause to lift the automatic stay. As set forth above, the exercise of Naissance's remedies against JV will not have an impact on the Debtor's estate or the recovery of creditors. Even though Naissance's exercise of remedies implicates control of the Debtor, membership interests in the Debtor are not property of the estate. Furthermore, JV's defaults under the Mezzanine Loan Documents entitle Naissance to exercise remedies against JV under the Mezzanine Loan Documents. *See* Exhibit D. Granting Naissance relief from the automatic stay to foreclose membership interests in the Debtor will not interfere with the administration of this case. If Naissance were to foreclose or exercise the voting rights of the membership interests, Naissance would be in the same position vis-à-vis its duties to the Debtor's estate and creditors as any other party. Therefore, there is no reason to maintain the automatic stay with respect to Naissance's proposed course of action.

## CONCLUSION

36.     WHEREFORE, Naissance respectfully requests the entry of an order, substantially in the form attached hereto (the "Order"): (i) confirming that the automatic stay does not apply to Naissance's exercise of remedies against JV, specifically by taking ownership or voting control over JV's ownership interests in the Debtor; (ii) finding that, based on the Temporary Injunction, Ms. Zaheer is permitted to control Naissance and take actions (such as dismissal) in the Adversary Proceeding without violating the automatic stay; and (iii) granting such other and further relief as the Court deems appropriate. In the alternative, Naissance seeks relief from the automatic stay to exercise remedies against JV and control and direct Naissance in the Adversary Proceeding.

Dated: October 31, 2023

        Respectfully submitted,

        **McCathern Houston**

        By: <u>/s/*Rodney L. Drinnon*</u>
        **Rodney L. Drinnon**
        Texas Bar No. 24047841
        Federal Bar No. 6059446
        rdrinnon@mccathernlaw.com
        2000 West Loop South, Suite 1850
        Houston, TX 77027
        Tel. (832) 533-8689
        Fax (832) 213-4842

        **ATTORNEY FOR NAISSANCE GALLERIA, LLC**

## **CERTIFICATE OF SERVICE**

This will certify that a true and correct copy of the foregoing document was forwarded by electronic transmission to all registered ECF users appearing in the case on October 31, 2023.

/s/*Rodney Drinnon*
Rodney L. Drinnon

## **CERTIFICATE OF CONFERENCE**

On October 31, 2023, prior to filing the Motion, I conferred with Debtor's counsel via email correspondence. Based on these communications, I understand the Debtor to be opposed to the relief sought herein.

/s/*Rodney Drinnon*
Rodney L. Drinnon