EXHIBIT

D

# PLEDGE AND SECURITY AGREEMENT

This PLEDGE AND SECURITY AGREEMENT is made and entered into to be effective as of May 23, 2018, by GALLERIA 2425 JV, LLC, a Delaware limited liability company ("**Pledgor**" or "**Borrower**"), in favor of NAISSANCE GALLERIA, LLC, a Cayman Islands limited liability company  (collectively, with its successors and assigns "**Lender**").

## RECITALS:

WHEREAS, National Bank of Kuwait, S.A.K.P., New York Branch, a banking corporation organized under the laws of Kuwait, acting through its New York Branch, as administrative agent ("**Mortgage Lender**"), is making a loan in the principal amount of Fifty-One Million Six Hundred Seventy-Five Thousand and No/100 Dollars (USD $51,675,000.00) (the "**Mortgage Loan**") evidenced by that certain Promissory Note, dated as of May 23, 2018 (the "**Mortgage Note**") made by GALLERIA 2425 OWNER, LLC, a Delaware limited liability company ("**Mortgage Borrower**"), and Mortgage Borrower has granted Mortgage Lender a first priority Deed of Trust, Assignment of Leases and Rents and Profits, Security Agreement and Fixture Filing dated as of the date hereof (the "**Deed of Trust**") on, among other things, the real property as more fully described in the Deed of Trust (the "**Property**");

WHEREAS, Pledgor is the legal and beneficial owner of one hundred percent (100%) of the direct membership interests in Mortgage Borrower;

WHEREAS, Borrower has requested Lender to make a loan to it in the original principal amount of Sixteen Million One Hundred Thousand and No/100 Dollars ($16,100,000.00) (the "**Loan**") evidenced by that certain Mezzanine Promissory Note, dated as of the date hereof (the "**Note**"); and

WHEREAS, it is a condition precedent to the obligation of Lender to make the Loan to Borrower, as borrower under the Loan Agreement, that Pledgor shall have executed and delivered this Agreement to Lender;

NOW, THEREFORE, in consideration of the premises herein and to induce Lender to make its loan under the Loan Agreement, Pledgor hereby agrees with Lender as follows:

1.      **Defined Terms**.

(a)      _Definitions_.  As used in this Agreement, the following terms have the meanings set forth in or incorporated by reference below:

"**Agreement**" means this Pledge and Security Agreement, as amended, supplemented or otherwise modified from time to time.

"**Article 8 Matter**" has the meaning ascribed to such term in **Section 20**.

"**Borrower**" has the meaning ascribed to such term in the introductory paragraph.

"**Code**" means the UCC from time to time in effect in the State of New York.

"**Collateral**" means the Pledged Securities and all Proceeds thereof.

"**Debt**" has the meaning ascribed to such term in the Loan Agreement,

"**Deed of Trust**" has the meaning ascribed to such term in the Recitals.

"**Issuer**" has the meaning ascribed to such term in **Section 6(b)**.

"**Lender**" has the meaning ascribed to such term in the introductory paragraph.

"**Loan**" has the meaning ascribed to such term in the Recitals.

"**Loan Agreement**" means the Mezzanine Loan Agreement of even date herewith between Borrower and Lender as the same may be hereafter modified, amended, increased, supplemented and/or restated from time to time.

"**Loan Documents**" means the Note, the Loan Agreement, this Agreement, the UCC-1 Financing Statements and the other documents and instruments entered into in connection with the Loan.

"**Mortgage Borrower**" has the meaning ascribed to such term in the Recitals.

"**Mortgage Borrower's Company Agreement**" shall mean that certain Amended and Restated Limited Liability Company Agreement of Mortgage Borrower dated and effective as of May __, 2018 by Borrower, as member.

"**Mortgage Lender**" has the meaning ascribed to such term in the Recitals.

"**Mortgage Loan**" has the meaning ascribed to such term in the Recitals.

"**Mortgage Note**" has the meaning ascribed to such term in the Recitals.

"**Note**" has the meaning ascribed to such term in the Recitals.

"**Pledged Securities**" means all limited liability company interests of Pledgor in Mortgage Borrower listed on **Schedule 1** hereto, together with all membership interest certificates, options or rights of any nature whatsoever which currently exist or hereafter may be issued or granted by Mortgage Borrower to Pledgor while this Agreement is in effect, including, without limitation, the certificates evidencing such interests which have been delivered to Lender pursuant to **Section 6(c)**.

"**Pledgor**" has the meaning ascribed to such term in the introductory paragraph.

"**Proceeds**" means all "proceeds" as such term is defined in Section 9-102(a)(64) of the Code in effect on the date hereof and, in any event, shall include, without

limitation, all dividends or other income from the Pledged Securities, collections thereon or distributions with respect thereto.

"**Property**" has the meaning ascribed to such term in the Recitals.

"**Special Damages**" has the meaning ascribed to such term in **Section 19(k)**.

"**UCC**" means the Uniform Commercial Code.

"**UCC-1 Financing Statements**" has the meaning ascribed to such term in **Section 12**.

(b)     Other Terms.  Terms used herein but not otherwise defined herein shall have the respective meanings ascribed to them in the Loan Agreement.  The words "hereof", "herein" and "hereunder" and words of similar import when used in this Agreement shall refer to this Agreement as a whole and not to any particular provision of this Agreement, and section, subsection, schedule and exhibit references are to this Agreement unless otherwise specified.  The word "including" when used in this Agreement shall be deemed to be followed by the words "but not limited to."

2.     **Pledge; Grant of Security Interest**.  Pledgor hereby pledges and grants to Lender, as collateral security for the prompt and complete payment and performance when due (whether at the stated maturity, by acceleration or otherwise) of the Debt, a first priority security interest in all of Pledgor's right, title and interest to the following:

(a)     all Pledged Securities;

(b)     all securities, monies, or property representing dividends or interest on any of the Pledged Securities, or representing a distribution in respect of the Pledged Securities, or resulting from a split-up, revision, reclassification or other like change of the Pledged Securities or otherwise received in exchange therefor, and any subscription warrants, rights or options issued to the holders of, or otherwise in respect of, the Pledged Securities;

(c)     all right, title and interest of Borrower in, to and under any policy of insurance payable by reason of loss or damage to the Pledged Securities and any other Collateral, provided, however, such grant contained in this **sub-paragraph (c)** shall not include any insurance policies or payments thereunder with respect to insurance policies obtained by Mortgage Borrower in connection with insuring the improvements located on the Property;

(d)     all "accounts," "deposit accounts," "general intangibles," "instruments," "securities," and "investment property" (in each case as defined in the Code) constituting or relating to the foregoing; and

(e)     all Proceeds of any of the foregoing (including, without limitation, any proceeds of insurance thereon).

3

**3.**      **Certificates and Powers**.  Concurrently with the execution and delivery of this Agreement, Pledgor shall deliver to Lender each original certificate evidencing the Pledged Securities (which certificates shall constitute "security certificates" (as defined in the Code)), together with undated limited liability company membership powers, covering each such certificate duly executed in blank with, if Lender so requests, signature guaranteed.

**4.**      **Representations and Warranties**.  Pledgor represents and warrants as of the date hereof that:

(a)      no authorization, consent of or notice to any other Person (including, without limitation, any member, partner or creditor of Pledgor or Mortgage Borrower) that has not been obtained, is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement including, without limitation, the assignment and transfer by Borrower of any of the Collateral to Lender or the subsequent transfer thereof by Lender pursuant to the terms hereof;

(b)      all of the Pledged Securities have been duly and validly issued and are fully paid and non-assessable;

(c)      the Pledged Securities listed on **Schedule 1** hereto constitute all the issued and outstanding membership interests in Mortgage Borrower;

(d)      Pledgor is the record and beneficial owner of, and has good and marketable title to, the Pledged Securities listed on **Schedule 1** hereto, in each case free of any and all Liens or options in favor of, or claims of, any other Person, except the Lien created by this Agreement;

(e)      upon delivery to Lender of the certificates evidencing the Pledged Securities, indorsed in blank by an effective indorsement evidenced by the limited liability company interest powers referred to below, the Lien granted pursuant to this Agreement will constitute a valid, perfected first priority Lien on the Pledged Securities and related Proceeds, enforceable as such against all creditors of Pledgor and any Persons purporting to purchase any Pledged Securities and related proceeds from Pledgor;

(f)      upon the filing of the UCC-1 Financing Statements referred to in **Section 12**, the Lien granted pursuant to this Agreement will constitute a valid, perfected first priority Lien on the Collateral not constituting the Pledged Securities and related Proceeds in such jurisdictions, enforceable as such against all creditors of Pledgor and any Persons purporting to purchase any such Collateral and related Proceeds from Pledgor;

(g)      the principal place of business and chief executive office of Pledgor is located at:  6501 Westchester Avenue, Houston, TX 77005-3781;

(h)      the exact name of Pledgor is, and at all times has been, GALLERIA 2425 JV, LLC;

4

      (i)     Pledgor is, and at all times has been, organized under the laws of the State of Delaware;

      (j)     there currently exist no certificates, instruments or writings representing the Pledged Securities other than those certificates delivered to Lender on the date hereof and set forth on **Schedule 1**, and to the extent that in the future there exist any additional certificates, instruments or writings, Pledgor shall deliver all such certificates, instruments or writings to Lender, together with undated limited liability company interest powers executed in blank with, if Lender so requests, signature guaranteed; and

      (k)     <u>UCC Article 8</u>.  The Pledged Securities (i) are "securities" within the meaning of Sections 8-102(a)(15) and 8-103 of the Code, (ii) are "financial assets" (within the meaning of Section 8-102(a)(9) of the Code) and (iii) are not credited to a "securities account" (within the meaning of Section 8-501(a) of the Code).  The Mortgage Borrower's Company Agreement and the certificates evidencing the Pledged Securities each state that the Pledged Securities are "securities" as such term is defined in Article 8 of the UCC as in effect in the state of Delaware.

     **5.**     <u>Covenants</u>.  Pledgor covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) is paid in full:

      (a)     <u>Acknowledgements of Parties</u>.  If Pledgor shall, as a result of its ownership of the Pledged Securities, become entitled to receive or shall receive any stock certificate or limited partnership or regular membership certificate, as applicable (including, without limitation, any certificate representing a dividend or a distribution in connection with any reclassification, increase or reduction of capital or any certificate issued in connection with any reorganization), option or rights, whether in addition to, in substitution of, as a conversion of, or in exchange for any shares of the Pledged Securities, or otherwise in respect thereof, Pledgor shall accept the same as Lender's agent, hold the same in trust for Lender and deliver the same forthwith to Lender in the exact form received, duly endorsed by Pledgor to Lender, if required, together with an undated stock, limited liability company interest power or limited partnership interest power covering such certificate duly executed in blank and with, if Lender so requests, signature guaranteed, to be held by Lender hereunder as additional security for the Debt.  Any sums paid upon or in respect of the Pledged Securities upon the liquidation or dissolution of Mortgage Borrower shall be paid over to Lender to be held by it hereunder as additional security for the Debt, and in case any distribution of capital shall be made on or in respect of the Pledged Securities or any property shall be distributed upon or with respect to the Pledged Securities pursuant to the recapitalization or reclassification of the capital of Mortgage Borrower or pursuant to the reorganization thereof, the property so distributed shall be delivered to Lender to be held by it, subject to the terms hereof, as additional security for the Debt.  If any sums of money or property so paid or distributed in respect of the Pledged Securities shall be received by Pledgor, Pledgor shall, until such money or property is paid or delivered to Lender, hold such money or

5

property in trust for Lender, segregated from other funds of Pledgor, as additional security for the Debt.  Pledgor shall cause Mortgage Borrower by such party's signature to the Acknowledgment and Consent, a form of which is attached hereto as **Exhibit A**, to agree that it will notify Lender promptly of the occurrence of any of the events described in this **Section 5(a)**.

(b)      Negative Covenants.  Without the prior written consent of Lender, Pledgor shall not, directly or indirectly (i) vote to enable, or take any other action to permit, Mortgage Borrower to issue any membership interests or shares, as applicable, or to issue any other securities convertible into or granting the right to purchase or exchange for any membership interests in Mortgage Borrower, or (ii) except as permitted by the Loan Agreement, sell, assign, transfer, exchange or otherwise dispose of, or grant any option with respect to, the Collateral, or (iii) create, incur, authorize or permit to exist any Lien or option in favor of, or any claim of any Person with respect to, any of the Collateral, or any interest therein, except for the Lien provided for by this Agreement.  Pledgor shall defend the right, title and interest of Lender in and to the Collateral against the claims and demands of all Persons whomsoever.

(c)      Filing.  At any time and from time to time, upon the written request of Lender, and at the sole expense of Pledgor, Pledgor shall promptly and duly give, execute, deliver, file and/or record such further instruments and documents and take such further actions as Lender may reasonably request for the purposes of obtaining, creating, perfecting, validating or preserving the full benefits of this Agreement and of the rights and powers herein granted including without limitation filing UCC financing or continuation statements, provided that the amount of the Debt shall not be increased thereby.  Pledgor hereby authorizes Lender to file any such financing statement or continuation statement without the signature of Pledgor to the extent permitted by law.  If any amount payable under or in connection with any of the Collateral shall be or become evidenced by any promissory note, other instrument or chattel paper, such note, instrument or chattel paper shall be promptly delivered to Lender, duly endorsed in a manner satisfactory to Lender, to be held as Collateral pursuant to this Agreement.

(d)      Limitation on Liens.  Pledgor will not create, incur or permit to exist, will defend the Pledged Securities against, and will take all such other action as is necessary to remove, any Lien or claim on or to the Pledged Securities, other than the Liens created hereby, and will defend the right, title and interest of Lender in, to and under the Pledged Securities against the claims and demands of all Persons whomsoever.

(e)      Further Identification of Pledged Securities.  Pledgor will furnish to Lender from time to time statements and schedules further identifying and describing the Pledged Securities and such other reports in connection with the Pledged Securities as Lender may reasonably request, all in reasonable detail.

(f)      Changes in Location, Name, etc.  Pledgor will not, unless (i) it shall have given forty-five (45) days' prior written notice to such effect to Lender and (ii) all action reasonably necessary or advisable, in Lender's opinion, to protect and perfect the Liens

6

and security interests intended to be created hereunder with respect to the Pledged Securities shall have been taken, (A) change the location of its chief executive office or principal place of business from that specified in **Section 4(g)**, or (B) change its name, identity or structure, or (C) reorganize or reincorporate under the laws of another jurisdiction.

      (g)      Intentionally Omitted.

      (h)      UCC Article 8.  The Pledged Securities (i) will continue to be "securities" within the meaning of Sections 8-102(a)(15) and 8-103 of the Code, (ii) will continue to be "financial assets" (within the meaning of Section 8-102(a)(9) of the Code) and (iii) will not be credited to a "securities account" (within the meaning of Section 8-501(a) of the Code).  The Mortgage Borrower's Company Agreement and the certificates evidencing the Pledged Securities each shall at all times state that the Pledged Securities are "securities" as such term is defined in Article 8 of the UCC as in effect in the state of Delaware.

      6.      **Certain Understandings of Parties; Registration of Pledge; Control of Pledged Collateral, Etc**.

      (a)      The parties acknowledge and agree that the Pledged Securities constitute "securities" (as defined in Section 8-102(a)(15) of the Code), and Pledgor covenants and agrees that (i) the Pledged Securities are not and will not be dealt in or traded on securities exchanges or securities markets, (ii) the terms of the Pledged Securities are not and will not be "investment company securities" within the meaning of Section 8-103 of the Code, and (iii) the Pledged Securities constitute "certificated securities" within the meaning of Section 8-102(a)(14) of the Code.

      (b)      Notwithstanding the foregoing, to better assure the perfection of the security interest of Lender in the Pledged Securities concurrently with the execution and delivery of this Agreement, Pledgor shall send written instructions in the form of **Exhibit C** hereto to each issuer thereof (individually and collectively, the "**Issuer**"), and shall cause the Issuer to deliver to Lender the Confirmation Statement and Control Agreement in the form of **Exhibit D** hereto pursuant to which the Issuer will confirm that it has registered the pledge effected by this Agreement on its books and agrees to comply with the instructions of Lender in respect of the Pledged Securities without further consent of Pledgor or any other Person.  Notwithstanding anything in this paragraph, neither the written instructions nor the Confirmation Statement and Control Agreement shall be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in this Agreement.

      (c)      concurrently with the execution and delivery of this Agreement, Pledgor shall deliver to Lender all of the certificates evidencing the Pledged Securities, together with undated limited liability company interest powers executed in blank with, if Lender so requests, signature guaranteed.

7.    **Cash Dividends; Voting Rights**.    Unless an Event of Default shall have occurred, Pledgor shall be permitted to receive all regular membership interest distributions or cash dividends paid in the normal course of business of Mortgage Borrower with respect to the Pledged Securities and to exercise all voting and regular membership interests or corporate rights with respect to the Pledged Securities; provided that no vote shall be cast or right exercised or other action taken which, in Lender's judgment, would impair the Collateral or which would be inconsistent with or result in any violation of any provision of the Loan Agreement, the Note, this Agreement or any other Loan Documents.

8.    **Rights of Lender**.

(a)    If an Event of Default (as defined in the Loan Agreement) shall occur, Lender shall have the right to receive any and all income, cash dividends, distributions, proceeds or other property received or paid in respect of the Pledged Securities and make application thereof to the Debt, in such order as Lender, in its sole discretion, may elect, in accordance with the Loan Documents.  If an Event of Default shall occur, then all such Pledged Securities at Lender's option, shall be registered in the name of Lender or its nominee (if not already so registered), and Lender or its nominee may thereafter exercise (i) all voting, all regular membership and other rights pertaining to the Pledged Securities and (ii) any and all rights of conversion, exchange, and subscription and any other rights, privileges or options pertaining to such Pledged Securities as if it were the absolute owner thereof (including, without limitation, the right to exchange at its discretion any and all of the Pledged Securities upon the merger, consolidation, reorganization, recapitalization or other fundamental change in the organizational structure of Mortgage Borrower or upon the exercise by Pledgor or Lender of any right, privilege or option pertaining to such Pledged Securities, and in connection therewith, the right to deposit and deliver any and all of the Pledged Securities with any committee, depositary, transfer agent, registrar or other designated agency upon such terms and conditions as it may determine), all without liability except to account for property actually received by it, but Lender shall have no duty to exercise any such right, privilege or option and shall not be responsible for any failure to do so or delay in so doing.

(b)    The rights of Lender under this Agreement shall not be conditioned or contingent upon the pursuit by Lender of any right or remedy against Pledgor or against any other Person which may be or become liable in respect of all or any part of the Debt or against any other security therefor, guarantee thereof or right of offset with respect thereto.  Lender shall not be liable for any failure to demand, collect or realize upon all or any part of the Collateral or for any delay in doing so, nor shall it be under any obligation to sell or otherwise dispose of any Collateral upon the request of Pledgor or any other Person or to take any other action whatsoever with regard to the Collateral or any part thereof.

(c)    Upon satisfaction in full of the Debt and payment of all amounts owed on the Note, Lender's rights under this Agreement shall terminate and Lender shall deliver to Pledgor UCC-3 termination statements or similar documents and agreements to

terminate all of Lender's rights under this Agreement and all other Loan Documents and Lender shall return to Pledgor all Pledged Securities and powers relating thereto.

(d)     Pledgor also authorizes Lender, at any time and from time to time, to execute, in connection with the sale provided for in **Sections 9** or **10** hereof, any endorsements, assignments or other instruments of conveyance or transfer with respect to the Collateral.

(e)     The powers conferred on Lender hereunder are solely to protect Lender's interest in the Collateral and shall not impose any duty upon Lender to exercise any such powers.  Lender shall be accountable only for amounts that it actually receives as a result of the exercise of such powers, and neither it nor any of its officers, directors, employees or Lenders shall be responsible to Pledgor for any act or failure to act hereunder, except for its or their gross negligence or willful misconduct.

(f)     If Pledgor fails to perform or comply with any of its agreements contained herein and Lender, as provided for by the terms of this Agreement, shall itself perform or comply, or otherwise cause performance or compliance, with such agreement, the expenses of Lender incurred in connection with such performance or compliance, together with interest at the Default Rate if such expenses are not paid on demand, shall be payable by Pledgor to Lender on demand and shall constitute obligations secured hereby.

9.     **Remedies**.

(a)     If an Event of Default shall occur, Lender may exercise, in addition to all other rights and remedies granted in this Agreement and in any other instrument or agreement securing, evidencing or relating to the Debt:

(i)     all rights and remedies of a secured party under the Code (whether or not said Code is in effect in the jurisdiction where the rights and remedies are asserted) and such additional rights and remedies to which a secured party is entitled under the laws in effect in any jurisdiction where any rights and remedies hereunder may be asserted, including, without limitation, the right, to the maximum extent permitted by law, to exercise all voting, consensual and other powers of ownership pertaining to the Collateral as if Lender were the sole and absolute owner thereof (and each Borrower agrees to take all such action as may be appropriate to give effect to such right);

(ii)     Lender may make any reasonable compromise or settlement deemed desirable with respect to any of the Collateral and may extend the time of payment, arrange for payment in installments, or otherwise modify the terms, of any of the Collateral;

(iii)     Lender in its discretion may, in its name or in the name of any Borrower or otherwise, demand, sue for, collect, direct payment of or receive any

9

money or property at any time payable or receivable on account of or in exchange for any of the Collateral, but shall be under no obligation to do so.

(b)       Without limiting the generality of the foregoing, Lender, without demand of performance or other demand, presentment, protest, advertisement or notice of any kind (except any notice required by law referred to below or otherwise required hereby) to or upon Pledgor, Mortgage Borrower, or any other Person (all and each of which demands, presentments, protests, advertisements and notices, or other defenses, are hereby waived to the extent permitted under applicable law), may in such circumstances forthwith collect, receive, appropriate and realize upon the Collateral, or any part thereof, and/or may forthwith sell, assign, give option or options to purchase or otherwise dispose of and deliver the Collateral or any part thereof (or contract to do any of the foregoing), in one or more parcels at public or private sale or sales, in the over-the-counter market, at any exchange, broker's board or office of Lender or elsewhere upon such terms and conditions as it may deem advisable and at such prices as it may deem best in its sole discretion, for cash or on credit or for future delivery without assumption of any credit risk.  Lender shall have the right, without notice or publication, to adjourn any public or private sale or cause the same to be adjourned from time to time by announcement at the time and place fixed for such sale, and any such sale may be made at any time or place to which the same may be adjourned without further notice.  Lender shall have the right upon any such public sale or sales, and, to the extent permitted by law, upon any such private sale or sales, to purchase the whole or any part of the Collateral so sold, free of any right or equity of redemption of Pledgor, which right or equity of redemption is hereby waived or released.  Lender shall apply to the payment in whole or in part of the Debt, in such order as Lender may elect, any Proceeds from time to time held by it and the net proceeds of any such collection, recovery, receipt, appropriation, realization or sale, after deducting all reasonable costs and expenses of every kind incurred therein or incidental to the care or safekeeping of any of the Collateral or in any way relating to the Collateral or the rights of Lender hereunder, including, without limitation, reasonable attorneys' fees and disbursements.  Only after such application and after the payment by Lender of any other amount required by any provision of law, including, without limitation, Sections 9-610 and 9-615 of the Code, shall Lender be required to account for the surplus, if any, to Pledgor.  To the extent permitted by applicable law, Pledgor waives all claims, damages and demands it may acquire against Lender arising out of the exercise by Lender of any of its rights hereunder, except for any claims, damages and demands it may have against Lender arising from the willful misconduct or gross negligence of Lender or its affiliates, or any agents or employees of the foregoing.  If any notice of a proposed sale or other disposition of Collateral shall be required by law, such notice shall be deemed reasonable and proper if given at least ten (10) days before such sale or other disposition.

(c)       Notwithstanding anything else herein to the contrary, Lender shall be entitled to exercise its rights under **Section 8** to register the Pledged Securities in the name of Lender or its nominee (if not already so registered) or this **Section 9** to collect, receive, appropriate and realize upon the Collateral only upon the expiration of a period of ten (10) days commencing on the date on which notice of such intention to exercise

10

any of such rights shall have been given by Lender to Pledgor in accordance with **Section 19(e)**, which notice may, at Lender's option, be included within any notice furnished by Lender to Pledgor under Section 11.6 of the Loan Agreement.

(d)     The rights, powers, privileges and remedies of Lender under this Agreement are cumulative and shall be in addition to all rights, powers, privileges and remedies available to Lender at law or in equity.  All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently without impairing the rights of Lender hereunder.

10.     **Private Sales**.

(a)     Pledgor recognizes that Lender may be unable to effect a public sale of any or all of the Pledged Securities, by reason of certain prohibitions contained in the Securities Act of 1933, as amended, and applicable state securities laws or otherwise, and may be compelled to resort to one or more private sales thereof to a restricted group of purchasers which will be obliged to agree, among other things, to acquire such securities for their own account for investment and not with a view to the distribution or resale thereof.  Pledgor acknowledges and agrees that any such private sale may result in prices and other terms less favorable to Lender than if such sale were a public sale and, notwithstanding such circumstances, agrees that any such private sale shall not be deemed to have been made in a commercially unreasonable manner solely by virtue of being a private sale.  Lender shall be under no obligation to delay a sale of any of the Pledged Securities for the period of time necessary to permit Mortgage Borrower or Pledgor to register such securities for public sale under the Securities Act of 1933, as amended, or under applicable state securities laws, even if Mortgage Borrower or Pledgor would agree to do so.

(b)     Pledgor further shall use its best efforts to do or cause to be done all such other acts as may be reasonably necessary to make any sale or sales of all or any portion of the Pledged Securities pursuant to this **Section 10** valid and binding and in compliance with any and all other requirements of applicable law.  Pledgor further agrees that a breach of any of the covenants contained in this **Section 10** will cause irreparable injury to Lender, that Lender has no adequate remedy at law in respect of such breach and, as a consequence, that each and every covenant contained in this **Section 10** shall be specifically enforceable against Pledgor, and Pledgor hereby waives and agrees not to assert any defenses against an action for specific performance of such covenants except for a defense that no Event of Default has occurred under the Loan Agreement.

(c)     Lender shall not incur any liability as a result of the sale of any Collateral, or any part thereof, at any private sale conducted in a commercially reasonable manner, it being agreed that some or all of the Collateral is or may be of one or more types that threaten to decline speedily in value and that are not customarily sold in a recognized market.  Borrower hereby waives any claims against Lender arising by reason of the fact that the price at which any of the Collateral may have been sold at such a private sale was less than the price which might have been obtained at a public sale or was less than the

11

aggregate amount of the Debt, even if Lender accepts the first offer received and does not offer any Collateral to more than one offeree, provided that Lender has acted in a commercially reasonable manner in conducting such private sale.

**11.** **Limitation on Duties Regarding Collateral**.  Lender's sole duty with respect to the custody, safekeeping and physical preservation of the Collateral in its possession, under Section 9-207 of the Code or otherwise, shall be to deal with it in the same manner as Lender deals with similar securities and property for its own account.  Neither Lender nor any of its directors, officers, employees or agents shall be liable for failure to demand, collect or realize upon any of the Collateral or for any delay in doing so or shall be under any obligation to sell or otherwise dispose of any Collateral upon the request of Pledgor or otherwise.

**12.** **Financing Statements; Other Documents**.  On the date hereof, Pledgor shall deliver to Lender (a) certificates with respect to the Pledged Securities owned by it, together with all powers related thereto, and (b) UCC-1 financing statements with respect to the Collateral, suitable for filing in such jurisdictions as Lender shall request ("**UCC-1 Financing Statements**").  Pledgor agrees to deliver any other document or instrument which Lender may reasonably request with respect to the Collateral for the purposes of obtaining or preserving the full benefits of this Agreement and of the rights and powers herein granted.

**13.** **Attorney-in-Fact**.  Without limiting any rights or powers granted by this Agreement to Lender, Lender is hereby appointed, which appointment as attorney-in-fact is irrevocable and coupled with an interest, the attorney-in-fact of Pledgor for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instruments which Lender may deem necessary or advisable to accomplish the purposes hereof including, without limitation:

      (a)     to ask, demand, collect, sue for, recover, compromise, receive and give acquittance and receipts for moneys due and to become due under or in respect of any of the Collateral;

      (b)     to receive, endorse and collect any drafts or other instruments, documents and chattel paper in connection with **clause (a)** above;

      (c)     to file any claims or take any action or institute any proceedings reasonably necessary or desirable for the collection of any of the Collateral or otherwise to enforce the rights of Lender, with respect to any of the Collateral; and

      (d)     to execute, in connection with the sale provided for in **Section 9** or **10**, any endorsement, assignments, or other instruments of conveyance or transfer with respect to the Collateral.

If so requested by Lender, Pledgor shall ratify and confirm any such sale or transfer by executing and delivering to Lender at Pledgor's expense all proper deeds, bills of sale, instruments of assignment, conveyance of transfer and releases as may be designated in any such request.

PLEDGE AND SECURITY AGREEMENT
NAISSANCE GALLERIA, LLC/GALLERIA 2425 JV, LLC
2425 WEST LOOP SOUTH – GALLERIA, HOUSTON/093158.588183
63315179.4

14.     **Additional Covenants of Pledgor Relating to Affirmative Covenants of Mortgage Borrower**.  Pledgor covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) is paid in full, Pledgor shall take and shall cause Mortgage Borrower to take, (i) any and all actions either necessary or reasonably requested by Lender to ensure complete compliance with Section 4.1 of the Loan Agreement, (ii) such actions as are required by or to comply with the terms of the Mortgage Loan Documents, in each case, applicable to it, and not to take any actions that violate any such documents and (iii) any and all actions to prevent Mortgage Borrower from applying amounts disbursed to Mortgage Borrower pursuant to the requirements of the Mortgage Loan Agreement in a manner contrary to the requirements of the Mortgage Loan Documents.

15.     **Additional Covenants of Pledgor Relating to Negative Covenants of Mortgage Borrower**.  Pledgor covenants and agrees with Lender that, from and after the date of this Agreement until the Debt (exclusive of any indemnification or other obligations which are expressly stated in any of the Loan Documents to survive satisfaction of the Note) is paid in full, Pledgor shall take and shall cause Mortgage Borrower to take any action to ensure compliance with Section 4.2 of the Loan Agreement.

16.     **Non-Recourse**.  The extent of personal liability of Pledgor shall be as set forth in Section 11.22 of the Loan Agreement.

17.     **Intercreditor Agreement. THE EXERCISE OF ANY RIGHT OR REMEDY BY THE LENDER IS SUBJECT TO THE PROVISIONS OF THE INTERCREDITOR AGREEMENT.   IN THE EVENT OF ANY CONFLICT OR INCONSISTENCY BETWEEN THE PROVISIONS OF THE INTERCREDITOR AGREEMENT AND THIS AGREEMENT REGARDING LENDER'S RIGHT TO EXERCISE ANY REMEDY HEREUNDER, THE PROVISIONS OF THE INTERCREDITOR AGREEMENT SHALL CONTROL.**

18.     **Indemnity**.  Pledgor agrees to indemnify Lender from and against any and all claims, losses and liabilities growing out of or resulting from enforcement of this Agreement that are incurred thereby (including without limitation enforcement of this Agreement), except claims, losses or liabilities resulting from Lender's gross negligence or willful misconduct.

19.     **Miscellaneous**.

(a)     **Severability**.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(b)     **Headings**.  The headings used in this Agreement are for convenience of reference only and are not to affect the construction hereof or be taken into consideration in the interpretation hereof.

13

(c)    No Waiver; Cumulative Remedies.  Lender shall not by any act (except by a written instrument pursuant to this **Section 19**), delay, indulgence, omission or otherwise be deemed to have waived any right or remedy hereunder or to have acquiesced in any default or in any breach of any of the terms and conditions hereof.  No failure to exercise, nor any delay in exercising, on the part of Lender, any right, power or privilege hereunder shall operate as a waiver thereof.  No single or partial exercise of any right, power or privilege hereunder shall preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  A waiver by Lender of any right or remedy hereunder on any one occasion shall not be construed as a bar to any right or remedy which Lender would otherwise have on any future occasion.   The rights, remedies, powers and privileges herein provided are cumulative, may be exercised singly or concurrently and are not exclusive of any rights, remedies, powers or privileges provided by law.

(d)    Waivers and Amendments; Successors and Assigns; Governing Law. None of the terms or provisions of this Agreement may be waived, amended, or otherwise modified except by a written instrument executed by the party against which enforcement of such waiver, amendment, or modification is sought.  This Agreement shall be binding upon and shall inure to the benefit of Pledgor and the respective successors and assigns of Pledgor and shall inure to the benefit of Lender and its successors and assigns; provided no Pledgor shall have any right to assign its rights hereunder.  The rights of Lender under this Agreement shall automatically be transferred to any permitted transferee to which Lender transfers the Note and Loan Agreement. This Agreement shall be governed by, and construed and interpreted in accordance with, the law of the State of New York.

(e)    Notices.  Notices by Lender to Pledgor or Mortgage Borrower to be effective shall be in writing (including by facsimile transmission), addressed or transmitted to Pledgor or Mortgage Borrower at the address or facsimile number of Pledgor set forth in the Loan Agreement, and shall be deemed to have been duly given or made (i) when delivered by hand, (ii) upon receipt or rejection, after being deposited in the postal system, certified mail and postage pre-paid, (iii) one Business Day following timely delivery to a nationally recognized overnight courier service, or (iv) in the case of facsimile notices, when sent and electronically confirmed.   Pledgor or Mortgage Borrower may change addresses and transmission numbers by written notice to Lender. Any communications by Pledgor to Lender may be given in any manner set forth in the immediately preceding sentence to the address or transmission number set forth in the Loan Agreement.

(f)    Agents.  Lender may employ agents and attorneys-in-fact in connection herewith and shall not be responsible for their actions except for the gross negligence or willful misconduct of any such agents or attorneys-in-fact selected by it in good faith.

(g)    Irrevocable Authorization and Instruction to Mortgage Borrower.  Pledgor hereby authorizes and instructs Mortgage Borrower and any servicer of the Loan to comply with any instruction received by it from Lender in writing that (i) states that an

14

Event of Default has occurred and is continuing beyond any applicable notice and cure periods set forth in the Loan Documents and (ii) is otherwise in accordance with the terms of this Agreement, without any other or further instructions from Pledgor, and Pledgor agrees that Mortgage Borrower and any servicer shall be fully protected in so complying.

(h)     Counterparts.   This Agreement may be executed in any number of counterparts and all the counterparts taken together shall be deemed to constitute one and the same instrument.

(i)     Submission To Jurisdiction; Waivers.     To the extent permitted by applicable law, Pledgor hereby irrevocably and unconditionally:

(i)     submits for itself and its property in any legal action or proceeding arising out of or relating to this Agreement, or for recognition and enforcement of any judgment in respect thereof, to the non-exclusive jurisdiction of the Federal and State Courts of the City of New York, County of New York, and appellate courts from any thereof;

(ii)     consents that any such action or proceeding may be brought in such courts and waives any objection that it may now or hereafter have to the venue of any such action or proceeding in any such court or that such action or proceeding was brought in an inconvenient court and agrees not to plead or claim the same; and

(iii)     agrees that nothing herein shall affect the right to effect service of process in any other manner permitted by law or shall limit the right to sue in any other jurisdiction.

(j)     **WAIVER OF JURY TRIAL, DAMAGES, JURISDICTION.** **PLEDGOR AND LENDER EACH HEREBY AGREES TO WAIVE ITS RIGHTS TO A JURY TRIAL ON ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT, THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT, OR ANY DEALINGS BETWEEN PLEDGOR AND LENDER. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT AND THAT RELATE TO THE SUBJECT MATTER OF THIS TRANSACTION, INCLUDING WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS. PLEDGOR AND LENDER EACH ACKNOWLEDGES THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO LENDER TO ENTER INTO A BUSINESS RELATIONSHIP WITH PLEDGOR. PLEDGOR REPRESENTS AND WARRANTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL, AND THAT SUCH WAIVER IS KNOWINGLY AND VOLUNTARILY GIVEN FOLLOWING CONSULTATION WITH LEGAL COUNSEL. THIS WAIVER IS**

15

**IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED, EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, REPLACEMENTS, REAFFIRMATIONS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT, OR ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.**

**WITH RESPECT TO ANY ACTION ARISING OUT OF OR RELATING TO THIS AGREEMENT, PLEDGOR SHALL AND HEREBY DOES SUBMIT TO THE NON EXCLUSIVE JURISDICTION OF THE FEDERAL AND STATE COURTS IN THE CITY OF NEW YORK, COUNTY OF NEW YORK (AND ANY APPELLATE COURTS TAKING APPEALS THEREFROM). PLEDGOR HEREBY WAIVES AND AGREES NOT TO ASSERT, AS A DEFENSE IN ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATING TO THIS AGREEMENT, (A) THAT IT IS NOT SUBJECT TO SUCH JURISDICTION OR THAT SUCH ACTION, SUIT OR PROCEEDING MAY NOT BE BROUGHT OR IS NOT MAINTAINABLE IN THOSE COURTS OR THAT THIS AGREEMENT OR ANY OF THE OTHER LOAN DOCUMENTS MAY NOT BE ENFORCED IN OR BY THOSE COURTS OR THAT IT IS EXEMPT OR IMMUNE FROM EXECUTION, (B) THAT THE ACTION, SUIT OR PROCEEDING IS BROUGHT IN AN INCONVENIENT FORUM OR (C) THAT THE VENUE OF THE ACTION, SUIT OR PROCEEDING IS IMPROPER. IN THE EVENT ANY SUCH ACTION, SUIT, PROCEEDING OR LITIGATION IS COMMENCED, PLEDGOR AGREES THAT SERVICE OF PROCESS MAY BE MADE, AND PERSONAL JURISDICTION OVER PLEDGOR OBTAINED, BY SERVICE OF A COPY OF THE SUMMONS, COMPLAINT AND OTHER PLEADINGS REQUIRED TO COMMENCE SUCH LITIGATION UPON PLEDGOR AT THE ADDRESS OF PLEDGOR AND TO THE ATTENTION OF SUCH PERSON AS SET FORTH IN THIS <u>SECTION 19</u>.**

      (k)    <u>No Special Damages</u>. No claim may be made by Pledgor against Lender, its affiliates and its respective directors, officers, employees, or attorneys for any special, indirect or consequential damages ("**Special Damages**") in respect of any breach or wrongful conduct (whether the claim therefor is based on contract, tort or duty imposed by law) in connection with, arising out of, or in any way related to the transactions contemplated or relationship established by this Agreement, or any act, omission or event occurring in connection herewith or therewith; and to the fullest extent permitted by law, Pledgor hereby waives, releases and agrees not to sue upon any such claim for Special Damages, whether or not accrued and whether or not known or suspected to exist in its favor.

      (l)    <u>Joint and Several Liability</u>. If Pledgor consists of more than one person or party, the obligations and liabilities of each such person or party hereunder shall be joint and several.

16

**20.**     **Irrevocable Proxy**.   Solely with respect to Article 8 Matters (as hereinafter defined), Pledgor hereby irrevocably grants and appoints Lender, from the date of this Agreement until the termination of this Agreement in accordance with its terms, as Pledgor's true and lawful proxy, for and in Pledgor's name, place and stead to vote the Pledged Securities, whether directly or indirectly, beneficially or of record, now owned or hereafter acquired, with respect to such Article 8 Matters.   The proxy granted and appointed in this **Section 20** shall include the right to sign Pledgor's name (as the sole member of Mortgage Borrower) to any consent, certificate or other document relating to an Article 8 Matter and the Pledged Securities that applicable law may permit or require, to cause the Pledged Securities to be voted in accordance with the preceding sentence.   Pledgor hereby represents and warrants that there are no other proxies and powers of attorney with respect to an Article 8 Matter that Pledgor may have granted or appointed.   Pledgor will not give a subsequent proxy or power of attorney or enter into any other voting agreement with respect to the Pledged Securities with respect to any Article 8 Matter and any attempt to do so with respect to an Article 8 Matter shall be void and of no effect.   The proxies and powers granted by Pledgor pursuant to this Agreement are coupled with an interest and are given to secure the performance of Pledgor's obligations.   As used herein, "**Article 8 Matter**" means any action, decision, determination or election by Mortgage Borrower or its member that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Uniform Commercial Code, and all other matters related to any such action, decision, determination or election and any action, decision, determination or election by Mortgage Borrower or its member that its membership interests or other equity interests, or any of them, be, or cease to be, a "security" as defined in and governed by Article 8 of the Uniform Commercial Code, and all other matters related to any such action, decision, determination or election.

**[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]**

17

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized officers as of the date set forth above.

**PLEDGOR:**

GALLERIA 2425 JV, LLC,
a Delaware limited liability company

By:    Naissance Capital Real Estate, LLC,
      a Delaware limited liability company,
      its Managing Member

By:   _____
Name:  Azeemeh Zaheer
Title:   Member

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

**LENDER:**

NAISSANCE GALLERIA, LLC,
a Cayman Islands limited liability company

By:   Naissance Capital Real Estate Ltd.,
      a Limited Liability UK Company,
      its Managing Member


By:   _____
Name:  Azeemeh Zaher
Title:   Chief Executive Officer

SCHEDULE 1
To Pledge and Security Agreement

DESCRIPTION OF PLEDGED SECURITIES

| Issuer | Owner | Percentage of Membership Interests |
|---|---|---|
| Galleria 2425 Owner, LLC | Pledgor | 100% |

Schedule 1

EXHIBIT A
To Pledge and Security Agreement

FORM OF ACKNOWLEDGMENT AND CONSENT

GALLERIA 2425 OWNER, LLC, a Delaware limited liability company ("**Mortgage Borrower**"), hereby acknowledges receipt of a copy of that certain Pledge and Security Agreement dated as of May 23, 2018 (as amended, supplemented, or otherwise modified from time to time, the "**Pledge Agreement**") and agrees that Pledgor is bound thereby.  Mortgage Borrower agrees to notify Lender promptly in writing of the occurrence of any of the events described in Section 5(a) of the Pledge Agreement.

Dated:  May 23, 2018

> GALLERIA 2425 OWNER, LLC,
> a Delaware limited liability company
>
> By:     Naissance Capital Real Estate, LLC,
>         a Delaware limited liability company,
>         its Managing Member
>
> By:     _____
> Name:  Azeemeh Zaheer
> Title:   Member

Exhibit A

EXHIBIT B
To Pledge and Security Agreement

INTENTIONALLY OMITTED

EXHIBIT C
To Pledge and Security Agreement

FORM OF INSTRUCTION TO REGISTER PLEDGE

May 23, 2018

To:    GALLERIA 2425 JV, LLC
6501 Westchester Avenue
Houston, TX 77005-3781

In accordance with the requirements of that certain Pledge and Security Agreement, dated as of May 23, 2018 (as amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"), between NAISSANCE GALLERIA, LLC, a Cayman Islands limited liability company ("**Lender**") and GALLERIA 2425 JV, LLC, a Delaware limited liability company ("**Pledgor**") (defined terms used herein as therein defined), you are hereby instructed, notwithstanding your and our understanding that the membership interest described below is a security under the Uniform Commercial Code, as a precaution in the event that such interest was nevertheless held not to be a security and to better assure the perfection of the security interest of Lender in such interests, to register the pledge of the following interests in the name of Lender as follows:

The one hundred percent (100%) direct limited liability company interest of the undersigned in GALLERIA 2425 OWNER, LLC, a Delaware limited liability company (the "**Issuer**") as listed on Schedule 1 to the Pledge Agreement including without limitation all of the following property now owned or at any time hereafter acquired by Pledgor or in which Pledgor now has or at any time in the future may acquire any right, title or interest:

(a)    all additional membership interests of, or other equity interests in, the Issuer and options, warrants, and other rights hereafter acquired by Pledgor in respect of such membership interests or other equity interests (whether in connection with any capital increase, recapitalization, reclassification, or reorganization of the Issuer or otherwise) (all such membership interests and other equity interests, including those described on Schedule 1 to the Pledge Agreement, and all such options, warrants and other rights being hereinafter collectively referred to as the "**Pledged Interests**");

(b)    all certificates, instruments, or other writings representing or evidencing the Pledged Interests, and all accounts and general intangibles arising out of, or in connection with, the Pledged Interests;

(c)    any and all moneys or property due and to become due to Pledgor now or in the future in respect of the Pledged Interests, or to which Pledgor may now or in the future be entitled to in its capacity as a member of the Issuer, whether by way of a dividend, distribution, return of capital, or otherwise;

(d)    all other claims which Pledgor now has or may in the future acquire in its capacity as a member of the Issuer and its property;

Exhibit C

(e)       all rights of Pledgor under the Limited Liability Company Agreement of the Issuer (and all other agreements, if any, to which Pledgor is a party from time to time which relate to its ownership of the Pledged Interests), including, without limitation, all voting and consent rights of Pledgor arising thereunder or otherwise in connection with Pledgor's ownership of the Pledged Interests; and

(f)       to the extent not otherwise included, all Proceeds of any or all of the foregoing.

You are hereby further authorized and instructed to execute and deliver to Lender a Confirmation Statement and Control Agreement, substantially in the form of Exhibit D to the Pledge Agreement and, to the extent provided more fully therein, to comply with the instructions of Lender in respect of the Collateral without further consent of, or notice to, the undersigned. Notwithstanding anything in this paragraph, this instruction shall not be construed as expanding the rights of Lender to give instructions with respect to the Collateral beyond such rights set forth in the Pledge Agreement.

**[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]**

Exhibit C

Very truly yours,

**PLEDGEE**:

NAISSANCE GALLERIA, LLC,
a Cayman Islands limited liability company

By:    Naissance Capital Real Estate Ltd.,
        a Limited Liability UK Company,
        Managing Member

By:    _____
Name: Azeemeh Zaher
Title:  Chief Executive Officer

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

Exhibit C

PLEDGE AND SECURITY AGREEMENT
NAISSANCE GALLERIA, LLC/GALLERIA 2425 JV, LLC
2425 WEST LOOP SOUTH – GALLERIA, HOUSTON/093158.588183

**PLEDGOR:**

GALLERIA 2425 JV, LLC,
a Delaware limited liability company

By:    Naissance Capital Real Estate, LLC,
       a Delaware limited liability company,
       its Managing Member

By: _____
Name:  Azeemeh Zaheer
Title:   Member

Exhibit C

EXHIBIT D
To Pledge and Security Agreement

CONFIRMATION STATEMENT AND CONTROL AGREEMENT

May 23, 2018

To:   NAISSANCE GALLERIA, LLC
c/o Walkers Corporate Limited
Cayman Corporate Centre, 27 Hospital Road
George Town, Grand Cayman KY1-9008
Cayman Islands

Pursuant to the requirements of that certain Pledge and Security Agreement dated as of May 23, 2018 (as amended, supplemented or otherwise modified from time to time, the "**Pledge Agreement**"), between NAISSANCE GALLERIA, LLC, a Cayman Islands limited liability company ("**Lender**"), and GALLERIA 2425 JV, LLC, a Delaware limited liability company (the "**Pledgor**") (defined terms used herein as therein defined), this Confirmation Statement and Control Agreement relates to those membership interests issued by GALLERIA 2425 OWNER, LLC, a Delaware limited liability company (the "**Issuer**"), as further described on **Schedule I** hereto (the "**Pledged Interests**").

The Pledged Interests are not (i) "investment company securities" (within the meaning of Section 8-103 of the Uniform Commercial Code (the "**Code**")) or (ii) dealt in or traded on securities exchanges or in securities markets.  The Pledged Interests are "securities" (within the meaning of Sections 8-102(a)(15) and 8-103 of the Code), and, therefore, for purposes of perfecting the security interest of Lender therein, the Issuer agrees as follows:

On the date hereof, the registered owner of one hundred percent (100%) of the direct membership interests in GALLERIA 2425 OWNER, LLC is:

GALLERIA 2425 JV, LLC, a Delaware limited liability company,
Taxpayer I.D. Number:  82-5200932

The registered pledgee of the Pledged Interests is:

NAISSANCE GALLERIA, LLC, a Cayman Islands limited liability company

There are no liens on the Pledged Interests or any adverse claims thereto for which the Issuer has a duty under Section 8-403 of the Code.  The Issuer has registered its Pledged Interests in the name of the registered pledgee on the date hereof.  No other pledge or other interest adverse to that of the registered pledgee is currently registered on the books and records of the Issuer with respect to its Pledged Interests.

Until the Debt is paid in full (exclusive of provisions which shall survive full payment), the Issuer agrees, (i) from and after the occurrence of an Event of Default, to comply with the instructions of Lender, without any further consent from Pledgor or any other Person, in respect

Exhibit D

of the Pledged Interests; and (ii) to disregard any request made by Pledgor or any other person which contravenes the instructions of Lender with respect to the Pledged Interests. Notwithstanding anything in this paragraph, this Confirmation Statement and Control Agreement shall not be construed as expanding the rights of Lender to give instructions with respect to the Pledged Interests beyond such rights as are set forth in the Pledge Agreement.

**[SIGNATURES COMMENCE ON THE FOLLOWING PAGE]**

Exhibit D

Dated:  May 23, 2018

Very truly yours,

GALLERIA 2425 OWNER, LLC,
a Delaware limited liability company

By:  Naissance Capital Real Estate, LLC,
a Delaware limited liability company,
its Managing Member

By:  _____
Name:  Azeemeh Zaheer
Title:  Member

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

Exhibit D

ACKNOWLEDGED AND AGREED:

NAISSANCE GALLERIA, LLC,
a Cayman Islands limited liability company

By:    Naissance Capital Real Estate Ltd.,
       a Limited Liability UK Company,
       Managing Member


By:    _____
Name: Azeemeh Zaher
Title:  Chief Executive Officer


**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

Exhibit D

GALLERIA 2425 JV, LLC,
a Delaware limited liability company

By:     Naissance Capital Real Estate, LLC,
        a Delaware limited liability company,
        its Managing Member

        By:     _____
        Name:  Azeemeh Zaheer
        Title:   Member

SCHEDULE I
To Confirmation Statement and Control Agreement

DESCRIPTION OF PLEDGED INTERESTS

100% of the direct membership interests in GALLERIA 2425 JV, LLC, a Delaware limited liability company